St. George's Church Society v. Branch; The Rector *et al., Interpleaders, Appellants;* McMaster, *Interpleader, Respondent.*

Division Two, February 13, 1894.

1. **Charitable Use:** GIFT: CHURCH. A gift of money to repair or build a church is one to a charitable use.

2. ———: INSOLVENT DEBTOR. An insolvent debtor can not, as against his creditors, donate his property to charitable uses.

3. **Corporation:** ULTRA VIRES: COLLATERAL ATTACK. The objection that a religious corporation also conducts a secular business can be raised only in a direct proceeding by the state.

4. **Corporate Stock:** ASSIGNMENT FOR BENEFIT OF CREDITORS. Where one promises to transfer corporate stock as a gift, but fails to do so and makes a general assignment for the benefit of creditors, such stock passes to the assignee.

5. ———: ———. Unpaid subscriptions of corporate stock will pass to the assignee under a general assignment for the benefit of creditors.

6. ———: ———: An assignee, for the benefit of creditors, may have the estate opened and administer on assets discovered after his discharge.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*Phillips, Stewart, Cunningham & Eliot* for the rector, wardens and vestrymen of St. George's Protestant Episcopal Church of St. Louis, interpleaders, appellants.

(1) Aside from the organization of the church society, Joseph W. Branch had in 1879, or prior thereto, given and donated to the parish the amount of money contributed by him toward the building of the parish church. A gift of money to repair or to build a church is a gift to charitable uses within the meaning of the statute of charitable uses (43 Eliz. ch. 4), and also at common law independently of that statute. Dwight's Charity Cases; *Magill v. Brown*, Brightley's Rep., p. 346, note; *Chambers v. St. Louis*, 29 Mo. 543. (2) Joseph W. Branch never paid St. George's Church Society any money. What he paid was paid toward the erection of the church before the society was organized, and was a free gift to the parish. (3) St. George's Church Society simply acquired the title to the church property as it stood, dedicated to religious uses of the parish, and impressed with a trust for its benefit. Const., art. 2, sec. 8; *Mormon Church v. United States*, 136 U. S. Rep. 1. (4) St. George's Church Society was by its organization and the law and purpose of its organization simply and solely a religious corporation, with power only to hold church property in trust. By express provision of the constitution it could not be established for any other purpose; nor could it acquire any right to any property other than church property, or hold property otherwise than in trust for the church

or parish. Wag. Stat. 1872, ch. 37, arts. 7, 8, secs. 2, 3, 5; Const., art. 2, sec. 8; Laws 1871-2, p. 16; Laws 1874, p. 132; Const., art. 12, sec. 7; *Church v. Tobbein*, 82 Mo. 418. A conveyance of property to this society otherwise than in trust for religious uses would have been void. Hence the conveyance of the church property to it must be held to have been of itself a dedication to the religious use of the parish. *Attorney General v. Webster*, L. R. 20 Eq. 483; Bishop on Contracts, secs. 391, 392, and cases cited. (5) The title by which and the purposes for which the church society acquired and held the church property were not affected by the fact that the society had what it inaccurately called "capital stock." (6) The incorporation of the parish under the name of "The Rector, Wardens and Vestrymen of St. George's Protestant Episcopal Church of St. Louis," herein called "the vestry," rendered the perpetuation of St. George's Church Society unnecessary, inasmuch as "the vestry" had all the corporate powers which had been possessed by the society. When the society, therefore, determined to wind up its affairs and cease to exercise its powers as a corporation, "the vestry" became its legitimate successor and entitled to the custody of the church property. *Church v. McGowan*, 62 Mo. 279; *Church v. Robberson*, 71 Mo. 326; *Coal Co. v. Bingham*, 97 Mo. 211. (7) The fund here in controversy is part and parcel of the church property, not severed from the rest by any lawful action on the part of the trustee, and belongs to the parish incorporated as the rector, wardens and vestry for religious purposes. *Church v. United States*, 136 U. S. 1; *Goode v. St. Louis*, 113 Mo. 257; 2 Perry on Trusts, sec. 709; *Ould v. Hospital*, 95 U. S. 303; 2 Story's Eq. Jur., secs. 1140, 1167-1171; *Magill v. Brown*, Brightley's Rep., p. 346, note; *McLain v.*

*School Directors*, 51 Penn. St. 196; *Beatty v. Kurtz*, 2 Peters, 566; 2 Kent's Com. [11 Ed.], s. p. 280; *Schmidt v. Hess*, 60 Mo. 591; *Church v. McGowan*, 62 Mo. 279; *Chambers v. St. Louis*, 29 Mo. 543; *Jackson v. Phillips*, 14 Allen, 556; Duke on Charitable Uses, ch. 10, sec. 5; Boyle on Charities, bk. 2, chap. 3, sec. 4, p. 212; Dwight's Charity Cases, pp. 1–178.

*W. C. Marshall* for interpleaders, D. R. Boogher *et al.*, appellants.

(1) The alleged gift by Branch to the vestry in 1886, being voluntary, is void as to these interpleaders, who represent a debt due since July 1, 1880, even though the grantee was ignorant of the insolvency of Branch and innocent of fraud. But Branch's insolvency was known to the donee in this case. *Gamble v. Johnson*, 9 Mo. 605; *White v. McPheeters*, 75 Mo. 286; *Sloan v. Terry*, 78 Mo. 623. (2) To make such gift void as to existing creditors, it is not necessary that the assignor should have been insolvent at the time of its execution. *Hastings v. Crossland*, 13 Mo. App. 592; *Potter v. McDowell*, 31 Mo. 62; 43 Mo. 93; *Bohannon v. Combs*, 79 Mo. 305. (3) The burden of proof is on the donee to repel the presumption of fraudulent intent. *Walsh v. Ketchum*, 84 Mo. 437. (4) Neither insolvency of the vendor nor knowledge thereof by the purchaser is a necessary ingredient in a fraudulent sale. *Rupe v. Alkire*, 77 Mo. 641; *Burgert v. Borchert*, 59 Mo. 80. (5) If a conveyance is made without consideration it is void as to existing creditors, without more. As to subsequent creditors, it is void if it is made with intent to hinder, delay or defraud them. *Hurley v. Taylor*, 78 Mo. 238; *Sloan v. Terry*, 78 Mo. 623. (6) A voluntary conveyance is presumptively void as to existing creditors, and the burden of proof is on the

donee to repel the presumption of fraudulent intent. *Walsh v. Ketchum*, 84 Mo. 427; *Shaw v. Tracy*, 83 Mo. 224. (7) The alleged consideration of Dr. Holland accepting the call does not make the gift a sale of the property, for the reason that, admittedly, such sale was not followed within a reasonable time by a delivery of the stock, and, therefore, as to these interpleaders it is wholly immaterial whether such acceptance of such ·call amounts to a contract for the sale of said stock or not. *Vogel v. Gast*, 20 Mo. App. 104. A sale of personalty, without delivery of the article sold, is void as to the vendor's creditors. *State to use v. Frank*, 22 Mo. App. 46. And such sale is not validated by a subsequent delivery, even before levy by an attaching creditor. *Cabanne v. Bay*, 10 Mo. App. 594; *Franklin v. Gumersel*, 11 Mo. App. 306. (8) If a debtor is in embarrassed circumstances and makes a voluntary conveyance, and is afterward unable to meet his debts, owing at the time of such conveyance, in ordinary course, or is reduced to such a condition that an execution against him would be unavailing, such a conveyance is void as to such debts. *Potter v. McDowell*, 31 Mo. 62. (9) Solvency consists not only in the present ability of the debtor to pay his debts, but in such condition of means that payment can be enforced by process of law. *Eddy v. Baldwin*, 32 Mo. 369; *State ex rel. v. Koontz*, 83 Mo. 323. (10) McMaster, Branch's assignee, acquired no title to this stock by the deed of assignment. (11) These interpleaders are entitled to a priority over the assignee. *George v. Williams*, 26 Mo. 190; *Jackman v. Robinson*, 64 Mo. 339.

*S. N. & J. G. Holliday* for interpleader, Boatmen's Bank, appellant.

(1) The Branch stock did not pass by his deed of assignment under which McMaster claims. *Heinrich v.*

*Wood*, 7 Mo. App. 236; *Roan v. Winn*, 93 Mo. 503. (2) The stock was the individual property of Branch, and was not held by him as a religious trust for the church. (3) The judgment creditors, levying on the property, have the first right to the fund. *George v. Williams*, 26 Mo. 190; *Jackman v. Robinson*, 64 Mo. 339; *Zoll v. Soper*, 75 Mo. 462.

*Orr, Christie & Bruce* for F. J. McMaster, interpleader, respondent.

(1) St. George's Church Society was incorporated under the laws of Missouri, and recognized by the state as a corporation *de jure*. Its articles of association, which formed a part of its charter, provided for a capital stock of one thousand one hundred and fifty shares of the par value of $50 each; also the manner in which the stock should be subscribed and paid for and the method of conducting the affairs of the company. The legality of such a corporation can not be questioned in a collateral proceeding. *Church v. Tobbein*, 82 Mo. 418; *Church v. McGowan*, 62 Mo. 279; *St. Louis v. Shields*, 62 Mo. 247. (2) Joseph W. Branch subscribed for stock in this society and paid the par value thereof on the faith of the articles of association, which constituted a valid contract between himself and the other stockholders. The vestry standing in the shoes of a stockholder and having accepted the benefits as such, can not now repudiate that contract. (3) St. George's Church Society acquired title to the church property by purchase at a public sale, under a deed of trust given to secure a valid debt. Under this purchase the society took the title free from any trust of a charitable nature whatsoever. It relations with the vestry were contractual in character and could be terminated at any time according to

the terms of the contract. (4) This theory of "an original dedication for charitable purposes," was never suggested or thought of by any of the stockholders, officers or agents of the society until the dividends had been declared and paid to all stockholders except Branch. The facts do not sustain it, and if they did, it is too late now to assert it. *Mott v. Seminary*, 129 Ill. 403; 2 Beach on Corporations, sec. 790; Angell & Ames on Corporations [11 Ed.], sec. 779*a*. (5) Title to the shares of stock passed to the assignee under the deed of assignment. *First.* Mr. Branch held the legal title to the shares on the twenty-seventh day of November, 1887, the date of the assignment, there being no substantial evidence of any transfer thereof by him prior to that date. *Second.* By the specific terms of the deed of assignment the shares of the stock, being choses, or "things in action," were conveyed to the assignee. Morawetz on Corporations [2 Ed.], sec. 193, p. 190. *Third.* By virtue of the reference in the deed to the statute relating to assignments, and by virtue of the general all-inclusive terms of the deed, the shares were conveyed to the assignee. Compare R. S. 1855, ch. 112, sec. 1, with R. S. 1879, ch. 5, sec. 354. Burrill on Assignments [6 Ed.], p. 103, *et seq.; Bank v. Roche*, 93 N. Y. 374; *State v. Keeler*, 49 Mo. 548. (6) Title to the shares having vested in the assignee upon the execution and delivery of the deed of assignment, no subsequent act on the part of the assignor or assignee or both, could disturb such vested title nor relieve it of the trust impressed upon it. *Mills v. Williams*, 33 Mo. App. 447; *Douglass v. Cissna*, 17 Mo. App. 45; *Gates v. LaBeaume*, 19 Mo. 27; *Valentine v. Decker*, 43 Mo. 544. (7) The judgments in favor of Boogher and the bank being against Branch alone, execution levied thereunder could be effectively levied only on the property of Branch, and since title to

the shares of stock was in the assignee and not in Branch, at the date of the levies, such levies were wholly without effect.    *Winn v. Madden*, 18 Mo. App. 261; *Co. v. Davis*, 70 Ga. 661; *Garretson v. Brown*, 26 N. J. L. 425; *Metcalf v. Van Brunt*, 37 Barb. 621.    (8) The fact that the assignment was closed and the assignee discharged before this stock was discovered, does not affect the assignee's title, or operate to revest the title in Branch.    *Garretson v. Brown, supra; Co. v. Davis, supra; Mills v. Williams, supra.*

BURGESS, J.—On the twenty-first of February, 1890, Davis R. Boogher obtained judgment against Joseph W. Branch for $4,500, for a claim that accrued July 1, 1880, which he assigned to John P. Boogher and W. C. Marshall.    On April 15, 1891, execution was issued on said judgment, and levied on two hundred and sixty-two and twenty-eight one hundredths shares of the stock of St. George's Church Society, belonging to and standing upon the books in the name of Joseph W. Branch.    On the sixth of June, 1891, the rector, wardens, and vestrymen of St. George's Protestant Episcopal Church, brought a suit for an injunction against Patrick M. Staed, sheriff, John P. Boogher and W. C. Marshall, to enjoin the sale of said stock, alleging that in May, 1886, Dr. Holland was visiting Mr. Branch; that St. George's Church was about to call him as their rector; that Branch told Holland that he would give him his stock if he would accept the call; that, partly influenced by this promise, Holland accepted the call; that Holland had frequently asked Branch to transfer the stock to him, but Branch had never done so, claiming that the certificates were mislaid, and so, as the stock could only be transferred on the books upon presentation and surrender of the stock, it had never up to June 6, 1891, the date of the filing of the injunc-

tion suit, been in Holland's possession or been transferred to him, but that the plaintiff was the owner in equity of the stock. Upon this showing the circuit court granted a temporary injunction.

On the tenth of July, 1891, the stockholders of St. George's Church Society determined to sell all of its property, distribute its assets among the stockholders, and wind up its affairs. The rector, wardens and vestrymen owned a majority of the stock in St. George's Church Society, which it had gotten by donation, purchase, in payment for pews sold and rented, etc., and with the Branch stock, which it claimed and voted at that meeting, it voted in favor of the proposition. Accordingly the property of the St. George's Church Society was sold, and two dividends, of $35 and $12 a share respectively, were declared. Each of the stockholders took his or its share, except Branch, whose stock had been levied upon under the Boogher execution, on April 15 preceding; and Mr. Rogers, the treasurer, had been garnisheed under the same execution in July, as soon as the dividend was declared.

Thereupon on the twenty-third of November, 1891, St. George's Church Society filed a bill for an interpleader against Joseph W. Branch, Davis R. Boogher, John P. Boogher, W. C. Marshall, F. J. McMaster, assignee of Joseph W. Branch, the rector, wardens and vestrymen of St. George's Protestant Episcopal Church, and the Boatmen's Savings Bank, and obtained leave to pay the dividends ($12,374.17) on the Branch stock into court, and an order for the defendants to interplead, which they accordingly did.

John P. Boogher and W. C. Marshall claim $4,500 judgment and $127.85 costs, by reason of their judgment of February 21, 1890, on a debt accruing July 1, 1880, and the levy on the stock on April 15, 1891, and the subsequent garnishment. The Boatmen's Savings

Bank claims $9,474.93 by reason of a judgment in its favor against Branch rendered on November 26, 1887, on a debt contracted December 16, 1884, and a levy and garnishment on this stock and its dividends on July 29, 1891, subject to the Boogher levy.   F. J. McMaster claims the whole fund as assignee of Joseph W. Branch, for the benefit of his creditors, under deed, dated November 25, 1887.

The deed of McMaster conveyed "all my lands and tenements, goods and chattels, bonds, notes, things in action, drafts, debts and accounts, and all my property of every kind and description, wherever situate." The sworn statement of the general nature and value of the property intended to be conveyed, which was attached to the deed of assignment, did not mention this stock. The assignee did not know of it or inventory it. The total amount realized by the assignee from the assigned estate was $333, and the total claims allowed against the estate were over $125,000.   The estate was closed and the assignee discharged February 18, 1890.   On February 4, 1892, over two months after this suit was filed and nearly two years after the estate was closed, the estate was opened, on motion of the assignee, and he was authorized to interplead.   Branch had been insolvent for more than a year before his assignment.

The claim of the rector, wardens and vestrymen of St. George's Protestant Episcopal Church is that it is the owner in equity of the Branch stock.   In the injunction suit, filed June 6, 1891, they claimed that because Branch had promised Holland in 1886, that if he would accept the call of the church he would give him the stock, and that Holland did accept the call,—hence the title to the stock passed in equity, although there had never been any change of possession prior to June 6, 1891.   In their interplea and testimony they claim the stock was never intended to have any

value, was a sort of religious trust fund, and that it was not stock at all, but represented the voting influence of the members of the society.

Over the objections of the interpleaders they were permitted to show that back in 1874 St. George's Church owned property on Seventh and Locust, which it sold for $25,000; that it then bought a lot on Beaumont and Chestnut streets and built a church; that after it was completed the church owed $56,700, of which sum $14,588 was due to Branch and $14,529 to Harrison; that Branch had a first mortgage on the property for $25,000, and Branch and Harrison a second mortgage to secure them on account of their indorsement on the note of the church held by the Mechanics' Bank; that in order to take care of the debt St. George's Church Society was incorporated, with a capital stock of $56,700; that Branch subscribed for stock to the amount of his liability as indorser, $14,588, and Harrison to the amount of his liability, $14,529, and the other members to the balance of the stock; that the church was sold under the second mortgage and bought in by Branch and Harrison for St. George's Church Society. Branch and Harrison were then given their stock, and afterward paid the notes held by the Mechanics' Bank, which made their stock full paid. With the subscriptions to the balance of the stock the debts were paid off. Thereupon the congregation organized as a religious corporation under the name of the Rector, Wardens and Vestrymen of St. George's Protestant Episcopal Church, and St. George's Church Society made a contract with the religious corporation, whereby the latter was given the use of the property upon the payment by it of all taxes, insurance, repairs, etc. This contract is referred to in the pleadings and by some of the witnesses as a perpetual lease. This is the basis for the alleged title in equity of the stock.

After April 15, 1891, when the stock had been levied on under the Boogher execution, Dr. Holland, acting as a committee for the rector, wardens, etc., paid Branch $2,500 for the stock, and had him sign a statement reciting the promised gift, the failure to carry it out, and saying that "in consideration of the promises and for value received" he transfers the stock. This statement is dated April 25, 1891. Thereafter, at a meeting of the stockholders of St. George's Church Society, Mr. Cunningham asked the secretary to let him see the stock book, and when he got possession of it Dr. Holland wrote on the stub of the Branch certificates a transfer of the stock to the rector, wardens, etc., and dated it April 27, 1891. Then they asked the secretary to issue new certificates, which he declined to do because the Branch stock had been levied upon. They all knew of the levy before the $2,500 was paid, or the stock so attempted to be transferred.

There is some doubt about the date of this transfer. Dr. Holland says it was in April, May or June. The bill for an injunction, which was filed June 6, alleged that it had not been transferred at that time. It remains in doubt, therefore, whether this took place on April 27, twenty days after the Boogher levy, or after the temporary injunction was issued on June 6, 1891. The certificate number 2, for two hundred and sixty-two and twenty-eight hundredths shares of stock, shows but one transfer, and that is to the rector, wardens, etc., and the date of the transfer is left blank, but certificate number 51, for one share, is transferred to the same assignee and is dated April 25, 1891.

It is claimed by this interpleader that although the stock was never transferred to it by Branch until after it was levied on, still it had always been regarded by all parties as its stock, and that it had always voted it.

under an irrevocable power of attorney. The secretary of the society, however, testified that Branch had always voted the stock at every meeting until the meeting of April 27, 1891.

The testimony further showed that so far as this stock being considered of no value and as a religious trust fund, all the stockholders took their dividends and used the money for such purposes as they saw fit; that a majority of the directors refused to put it into the new church, and the assets were all divided, the rector, wardens and others getting their share, and that there never was any agreement that the stock was not to be considered valuable.

The vestry claims the fund on the theory that the stock was never the individual property of Branch, but was always held by him for the use of the church.

The court decreed that the fund be paid to F. J. McMaster, assignee of Branch, from which judgment and decree the other interpleaders took their appeal to this court.

It may be conceded that a gift of money to repair or build a church is a gift to charitable uses, and that if Branch had, in 1879 or prior thereto, given and donated to the parish the amount subscribed by him toward the building of the parish church called "St. George's Episcopal Church," and for which certificates of stock were issued to him—that such gift was one to charitable uses. *Chambers v. City of St. Louis*, 29 Mo. 543. And also that said church society had the right to acquire and hold property for the religious use of the parish. Const., art. 2, sec. 8. But it is not conceded that an insolvent debtor can give or donate his property to charitable uses and thereby defraud his creditors of their just demands. An insolvent debtor can no more give away his property for a charitable use, so as to defraud his creditors, than he can to an individual.

There can, therefore, be no question but that all donations made to St. George's Episcopal Church, before the incorporation of St. George's Church Society, November 23, 1878, were donations to charitable uses, subject, however, to the rights of creditors.

The articles of association of said society are as follows:

ARTICLES OF ASSOCIATION OF ST. GEORGE'S CHURCH SOCIETY.

"1. The undersigned citizens of the city of St. Louis, state of Missouri, hereby associate themselves under the name of 'St. George's Church Society' and purpose to become incorporated as such under an order to be made for that purpose by the circuit court of the city of St. Louis.

"2. The object and purpose of this society shall be to purchase, acquire and hold the church, chapel and all other property, real and personal, now held by or in trust for, or occupied or used by the rector, vestry and congregation of what is commonly called 'St. George's Episcopal Church,' and to make such additions, repairs and alterations in respect to said property as to the society shall seem proper.

"3. The society shall have a capital stock of $56,700, divided into eleven hundred and thirty shares of $50 each.

"4. Subscribers to the capital stock of the society shall pay for the same to the treasurer in installments of not over twenty per cent. at any time, upon call of the board of directors, made at least thirty days before the installment is required to be paid.

"5. The property and business interest of the society shall be under the control of a board of directors to be composed of nine persons to be chosen annually by the stockholders. The first meeting of the

board of directors shall be held at Number 221 Olive street, St. Louis, at 4 P. M. on November 18, 1878.

"6.   The board of directors shall elect from their members a president, a vice-president, a secretary and treasurer, to serve until a new board of directors is chosen, which at its first meeting shall elect officers for the year next ensuing.   All vacancies in the board or officers chosen thereby shall be filled by the board at the first meeting after a vacancy shall have occurred.

"7.   The society shall not conduct religious services, nor control the same, but shall give the free use of the church, chapel and other property to the rector, wardens and vestry of St. George's Church for the purposes of having religious services conducted by them and under their directions, according to the form and system authorized and practiced by the Protestant Episcopal Church.   All pews and sittings in said church and chapel shall be entirely at the disposal of said rector, wardens and vestry and all pew rents and other incomes of the church shall belong to them without responsibility to the society.   They may sell pews or sittings in said church or chapel and may receive payment therefor with like exemption from accountability to the society.

"8.   The vestry of St. George's Church may acquire and hold stock in the society by accepting the same as a gift or bequest, and shall accept the same at par in payment for pews and sittings sold. They may also receive said stock in payment for pew rents and may purchase the same at pleasure.   All stock acquired by the vestry shall be held in trust for St. George's Church and shall not be sold or transferred except by unanimous consent of the parishioners evidenced by resolution unanimously adopted at a regular parish meeting and by persons entitled to vote at such meetings.

"9.    All pews and sittings sold by the vestry shall vest in the purchasers, their heirs and assigns, and shall give them the same right and privileges, as if the church and chapel were the property of the rector, wardens and vestry of St. George's Church; all pew owners shall not be taxed on their pews more than five-eighths of the ordinary rent of a like pew in said church or chapel.

"10.    In consideration of the foregoing, the rector, wardens and vestry of St. George's Church shall assume and pay all taxes, if any, and the expenses of all insurance, repairs, water, gas, and all other expenses attendant upon the provision for and conduct of religious services in said church and chapel.

"11.    The property of the society shall not be sold or mortgaged except upon authority therefor, previously given at a meeting of the stockholders, at which not less than eight per cent. of all the stock of the society shall be voted in favor of such sale or mortgage.

"12.    The moneys necessary to answer the purpose of the society shall be raised by the sale of the stock and by voluntary subscriptions or donations and not otherwise, unless a sale or mortgage of property shall be authorized as provided in article 11.

"13.    The board of directors for the first year shall be composed of the following persons:  Edwin Harrison, Joseph W. Branch, Daniel E. Garrison, Jno. D. Pope, W. C. France, H. T. Simon, Hugh Rogers, W. L. Black and W. Bascome.

"There shall be a meeting of the stockholders annually on an evening in November to be appointed by the board of directors, or fixed in the by-laws, at which meeting the board of directors for the ensuing year shall be chosen, each share of stock being entitled to one

vote.   Special meetings of the board may be called at any time and upon such notice as shall seem proper to the board.

"14.   By-laws may be adopted and changed by the board of directors and without the sanction of the stockholders.

"This November 14, 1878."

About the year 1872 the congregation of St. George's Church undertook to erect a church on a lot of ground which it owned at the corner of Beaumont and Chestnut streets, in St. Louis, at an estimated cost of about $45,000. The title to the lot stood in the name of Henry T. Simon and others, trustees.   When the church was completed it was found to have cost about $80,000, which brought the congregation, or parish or vestry largely in debt.   Some $29,000 of the debt was carried until 1878 by Branch and Harrison, who raised the money for the church on their own note or indorsement in bank.  To secure Messrs. Branch and Harrison, the trustees, in whose name the real estate stood, by the direction of the parish or vestry, executed a deed of trust on the church property.   Efforts were subsequently made by the parish to pay off its debt.  Branch and Harrison agreed that if the balance of the debts were subscribed and paid off, they would donate and forgive to the parish what they had advanced and were carrying.   For the purpose of raising the money necessary to pay off the indebtedness, St. George's Church Society was incorporated.   This scheme proved successful.   Branch and Harrison agreed to take stock for the debt paid by them.   Branch finally received two hundred and sixty-two and twenty-eight hundredths shares in 1886, having voted them from the organization of the society.   Three of his shares he transferred to his wife and they were not involved in this suit.

On March 3, 1879, St. George's Church Society,

by agreement with the rector, wardens and vestry of St. George's Church, turned over to the vestry all of its property for the free use of the parish, and it was so used until the buildings and personal property were destroyed by fire in March, 1891. From the sale of the church property after the fire, and the fire insurance, the society realized money enough to pay off all its indebtedness, leaving a balance on hand of $12,379.17, which is involved in this controversy.

The society possesses the elements of both a business and religious corporation. But it is contended that the capital stock or business features of the corporation is of no effect and may be disregarded because foreign to the object of the charter, and therefore contrary to the constitution and laws of the state governing religious corporations. This question can not be raised in this proceeding and could only be raised by a direct proceeding by the state. *Church v. Tobbein*, 82 Mo. 418; *City of St. Louis v. Shields*, 62 Mo. 247. It is therefore unnecessary to discuss that question in this case.

It will be observed that it is provided by section 3 of the articles of incorporation that the society shall have a capital stock of $56,700, divided into eleven hundred and thirty shares of $50 each. Under this provision of the articles of incorporation stock was taken by various persons and certificates issued to the purchasers thereof, and, among the rest, the one issued to Branch, number 2, for two-hundred and sixty-two and twenty-eight hundredths shares which would seem to conclusively show that the stock taken by him was never intended as a donation to the society, and was not so understood by its members.

As a further evidence that Branch did not donate his subscription for stock to the society on the tenth day of July, 1891, the stockholders of the society determined to sell its property and wind up its affairs,

and in pursuance of such determination, the property of the society was sold, and two dividends of $35 and $12 a share respectively were declared, and each one of the stockholders took his share except Branch, whose stock had been levied upon.

While it is contended that the stock in the society had no merchantable value, it is shown by the evidence that Dr. Holland paid $2,500 for the Branch stock to Judge Boyle on or about the twenty-first day of July, 1891, when the certificate was turned over to him. Further than this, the treasurer of the society testified that he was a member of the church, holding fifty-one shares of stock, and that he reported the liabilities to the society, showing that he never agreed with any one that his stock was not to be considered of any financial value; that he drew his dividends in cash and all the other stockholders did the same, and that all the fund in court was the dividend on the Branch stock.

It appears from the evidence that St. George's Church was about to call Dr. Holland as their rector; that Branch stated to him that he would give him his stock if he would accept the call, and that, partly influenced by this proposition he accepted the call, and while he had repeatedly asked Branch to transfer the stock to him, he had never done so. After the stock had been levied upon by virtue of an execution issued on the Boogher judgment, Dr. Holland obtained from Branch an instrument of writing reciting, among other things, the following:

"Whereas on the fifteenth day of July, 1886, Joseph W. Branch was the owner of two hundred and sixty-two and twenty-eight hundredths shares, each of the par value of $50 of the capital stock of St. George's Church Society * * *.

"And whereas, in consideration of the acceptance of a call to said St. George's Church on or about the'

fifteenth day of July, 1886, by the Rev. Robert A. Holland as the rector of said church, I, the undersigned, Joseph W. Branch, then a member of St. George's Church, did verbally promise and agree with said Holland as the representative of said vestry and church that I would, in consideration of his acceptance of said call, and in further consideration of love and affection for said church, transfer and convey to said Holland, as rector of said church, the said two hundred and sixty-two and twenty-eight hundredths shares of said stock."   *   *   *.

If there had been any doubt as to the intention of Branch and the members of the society with reference to this stock before this paper was obtained from him, there could not be room for anything of the kind thereafter for the recitals show that no such intention ever existed, and the society should be held to be estopped thereby.

As to the promise by Branch to Dr. Holland to give the stock to him, it was never complied with and the stock passed to the assignee under the deed of assignment. After the execution of the deed Branch had no control over the certificate whatever, and could do nothing to defeat the objects of the assignment. The stock was the individual property of Branch and was not held by him in trust for the society.

McMaster, interpleader, claims the fund under the deed of assignment of the stock made by Branch on the twenty-fifth day of November, 1887, for the benefit of his creditors.   E. H. Lindley was appointed assignee by the deed, but declined to qualify, and McMaster was duly appointed in his place.   Only that part of the deed of assignment which is necessary to be considered in connection with the case, is as follows:   *   *   * "do bargain, sell, convey, transfer and assign unto said E. H. Lindley, all my lands and tenements, goods

and chattels, bonds, notes and things in action, drafts, debts and accounts, and all my property of every kind and description wherever situated." The language employed in the deed is very broad and covered all the property of every kind and description of which the assignor was at the time the owner.

There was some evidence tending to show that the certificate of stock had been disposed of by Branch before the assignment, and at that time was not in his possession. He stated to J. C. Orrick that he had disposed of it before that time to a creditor and that this was the reason it was not included in his schedule attached to his assignment. It was subsequently found in the possession of Judge Boyle from whom it was redeemed by Dr. Holland.

While we think that the burden of proof rested on the assignee to show that his assignor was in possession of or the owner of the stock at the time of the assignment before he could have acquired any right or title thereto by virtue of the deed, yet the evidence showed that the certificate was in the first place delivered to Branch; that the stock stood on the books of the society in his name, until April 27, 1891; that he had always voted it, until just before that time; that he produced and assigned it on that day to the rector, wardens and vestry of the church; that the name of the creditor to whom he said that it was pledged was never disclosed; his statement that he could control it, and that he did in fact do so, conclusively show that he had never disposed of it at all and that it was in his possession and under his control from the time it was delivered to him until he delivered it to Dr. Holland and assigned it to the rector, wardens and vestry.

Shares of stock are choses or things in action. Morawetz on Private Corporations [2 Ed.], sec. 193. They "are mere contract rights, or, in technical lan-

guage, choses in action." *Id.*, sec. 225. "An assignment for the benefit of creditors may embrace every description of property which is in its nature assignable; and, when purporting or intended to be a general disposition of the assignor's property, should be in good faith a transfer of the whole, including real and personal estate, debts and choses in action. Among these may be more particularly mentioned lands; * * * debts and choses in action generally, * * * possibilities coupled with an interest, contingent interests and expectancies * * *. Unpaid subscriptions to the stock of a corporation will pass under a general assignment." Burrill on Assignments [6 Ed.], sec. 65; *Eppright v. Nickerson*, 78 Mo. 482.

The legal effect of the deed of assignment was to vest in the assignee as soon as it was delivered or recorded, all property of Branch of every kind and description embraced within its terms for the benefit of the creditors of the assignor, and nothing that he could do thereafter with respect of the property without their consent could in any way affect their rights. The fact that the assignee had been discharged did not reinvest Branch with the title to the stock. The discharge of the assignee was no revocation of the deed of assignment. In the case of *McFerran, Shallcross & Co. v. Davis*, 70 Ga. 661, it was held that when under a deed of assignment for the benefit of creditors the assignee had resigned, the trust should not fail for the want of a trustee, but the court would appoint one.

The legal title to the stock having vested in the assignee by virtue of the deed of assignment as soon as it was recorded, will remain there until disposed of by some proper judicial proceeding, and was not subject to the executions of the interpleaders Boogher and Marshall or the Boatmen's Savings Bank, nor could Branch after that time assign it to the rector, wardens and ves-

try.    *Garretson v. Brown*, 26 N. J. L. 425; *McFerran, Shallcross & Co. v. Davis, supra.*    We think that the judgment should be affirmed and it is so ordered.    All of this division concur.