STATE ex rel. WAGGONER, Respondent, v. LICHT-MAN-GOODMAN & COMPANY et al., Appellants.

**St. Louis Court of Appeals, April 14, 1908.**

1. **EVIDENCE: Assignment: Secondary Evidence.** In an action on an attachment bond, where it was claimed that the property attached, had passed under a general assignment to an assignee, before the attachment, and secondary evidence was admitted without objection to show the deed of assignment, the plaintiff could not afterwards be heard to complain that the assignment was not proved.

2. **ACTION ON ATTACHMENT BOND: Counterclaim: Jury Question.** In an action on an attachment bond where the defendant set up as a counterclaim some notes given by the attachment defendants to the attachment plaintiff for the debt which formed the basis of the attachment suit, and the evidence was conflicting as to whether the notes were accepted in settlement of the debt or not, that question was properly submitted to the jury.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED.

*Duncan & Bragg* for appellant.

Respondent was not entitled to any damage to the goods attached for the reason that they did not belong to him, but were the property of the assignee in Tennessee when attached and if any damage occurred to the goods by reason of the attachment, such damage would accrue to the assignee and not to the assignor, the respondent herein. St. George's Society v. Branch, 120 Mo. 226; Cody v. Vaughan, 53 Mo. App. 169; Trust Co. v. Vincent, 77 Mo. App. 76.

*Sterling H. McCarty* and *R. L. Ward* for respondent.

There was no shown in the evidence that any legal assignment was ever made as the law directs and the burden of proof was on the appellants in this behalf; if an assignment at all, it was in the State of Tennessee, and the Tennessee law was not introduced to show a legal assignment made in this case; the purported assignment was in writing and it was never offered to show who signed it; to whom it was made; when it was made; whether recorded or not; what property it included; whether the property in controversy was named therein; whether general or special assignment; whether assignee accepted the trust and qualified as such and for what purpose the purported assignment was made; there may be a general or partial assignment made. 3 Am. & Eng. Ency. of Law (2 Ed.), pp. 6, 35. Only such property as is especially mentioned in the terms of assignment will pass to assignee. Ibid, page 36; Scheibler v. Mundinger, 86 Tenn. 674; Rosenbaum v. Moller, 85 Tenn. 653.

GOODE, J.—This is an action on an attachment bond in the usual form. The relator Waggoner was indebted to defendants in the sum of $400 for merchandise, and having made a general assignment of all his goods, wares and merchandise August 18, 1903, to T. J. Little, of Dresden, Tennessee, for the benefit of creditors, defendants instituted their attachment action in Pemiscot county and caused the writ to be levied on several boxes of merchandise. Waggoner owned a stock of goods in Weakley county, Tennessee, and a stock in Caruthersville, in Pemiscot county, Missouri. He included in his assignment to Little both lots of goods, but, as said, a few days afterwards the lot at Caruthersville was seized under the writ of attachment sued out by defendants. Their attachment was sustained, but a trial of the merits before a jury resulted in a verdict in

favor of Waggoner. As we infer from the testimony in the present action this result was due to the following circumstances: Waggoner had been negotiating for a compromise with defendants' attorney who lived in Dresden, Tennessee. In the course of the negotiation Waggoner executed and sent to said attorney six notes of twenty-five dollars each, or one hundred and fifty dollars in all, in settlement of what he owed defendants. The attorney returned the notes to Waggoner, we suppose because defendants refused to accept them in payment of the account, and, instead, brought the attachment action. In defense of the merits of said action, Waggoner answered that he had discharged the account sued for by giving the six notes, and tendered $25 in payment of the one which fell due first. The verdict in the attachment action in Waggoner's favor, can be accounted for only on the supposition of a finding by the jury that he had paid the merchandise account by the notes. In some way not explained, the notes passed again into the possession of these defendants and were set up in a counter-claim in the present action and judgment on them prayed against Waggoner for their amount—$150 and interest. On the trial plaintiff was allowed to testify he had lost $45 by damage to the goods at Caruthersville as a result of their seizure under the attachment, and $65 from the assignee in Tennessee being forced to remit said sum from the purchase price of the Tennessee goods sold by him under Waggoner's assignment for the benefit of creditors. The latter loss was explained in this way; the assignee had contracted to sell all the assigned property, including the Caruthersville goods, and when it was found he was unable to deliver the latter parcel of goods, the purchaser demanded a reduction from the price of the Tennessee goods, asserting he had been damaged to the amount of $65 by not getting the Caruthersville merchandise. In addition to those items of damages, it was conceded a reasonable attorney's fee

in the attachment case would be $50, and that some other expenses were entailed on relator. The jury returned a verdict against defendants on the bond for $26.25, after allowing all setoffs and counter-claims.

The main assignment of error is the admission of testimony regarding the supposed loss to relator from damage to the goods attached, and the loss of $65 on the price of the goods sold by the assignee in Tennessee. It is insisted both these losses were sustained by the assignee for the benefit of creditors, and not by relator, and hence should not have been considered by the jury in assessing damages in relator's favor on the attachment bond. Counsel for relator answer this proposition by saying the assignment was not properly proved and hence it cannot be known one had been made; and further it was not proved .the Caruthersville goods were included in the assignment. They say the deed of assignment should have been introduced. No doubt it was the best evidence of the fact that there was an assignment and of what goods it covered. But relator himself testified voluntarily to the execution of the deed of assignment to Little, and that it included his stock of merchandise in Tennessee and the attached goods at Caruthersville; also that he considered the latter goods had been delivered under the assignment when attached, as they had been boxed and put away for the assignee. Secondary evidence of these facts having been admitted without objection, it was competent proof of the facts. Moreover it was uncontradicted; for plaintiff was the only witness who testified in the case. From his statements it is perfectly manifest he had no right to recover either for damage to the attached property, or for the abatement from the price of the merchandise sold by the assignee in Tennessee. The title to both lots of goods had passed from Waggoner to the assignee under the general assignment for the benefit of creditors prior to the levy of the attachment. [St George's Society v.

Branch, 120 Mo. 226, 25 S. W. 218.] The assignee might have recovered the goods from the sheriff by interplea or replevin or have sued for their value. The court, in instructing the jury, took the view that the right to recover the items of damages we are considering was in the assignee if there had been an assignment; but erred in leaving it to the jury to determine whether there had been, and if so, whether it covered the attached goods. No issue of fact ought to have been framed regarding this matter because relator was bound by what he testified, he being the party in interest and his testimony uncontradicted.

It is insisted the judgment ought not to be reversed because, granting said damages could not be recovered, nevertheless, it is apparent the jury allowed defendants' counterclaim on the six promissory notes; whereas the undisputed evidence shows said notes did not belong to them. On the facts in the record we hold the question of whether the notes belonged to defendants and were proper matter of counterclaim, was rightly left to the jury. The effect of the instructions was that if the notes were tendered to defendants but never accepted by them, they should not be taken into consideration in arriving at a verdict, but if the jury believed they were accepted by defendants, the latter could recover on their counterclaim. As we have said, relator set up as his defense to the merits of the attachment action, that he had settled the account sued on by turning over the notes and afterwards we find defendants in possession of them. Whether or not they were given and accepted in settlement, was a question of fact.

The judgment is reversed and the cause remanded. All concur.