BERTHA MAY FULWIDER and EVA MYRTLE
FULWIDER et al., Minors, by HOMER HALL,
Curator, Appellants, v. TRENTON GAS, LIGHT
& POWER COMPANY, THOMAS F. FULKER-
SON and JAMES B. CARNES.

### Division One, February 25, 1909.

1. **PLEADING: Misjoinder of Parties: Demurrer or Answer.** If
facts showing a misjoinder of parties plaintiff or defendant
do not appear on the face of the petition, so the objection can
be raised as an issue at law by demurrer, they are well pleaded
by answer. But an answer cannot be made to swap places
with a demurrer. By answering over, defendants waive the
misjoinder of parties defendant, if the issue can be raised by
demurrer.

2. ————: ————: **Tortfeasors.** Tortfeasors are liable jointly
and severally. Every one doing the negligent injury may be
sued. And a petition charging that defendants negligently
caused the injury does not wrongfully join parties defendant.
Nor is it necessary to plead evidential facts showing how de-
fendants were united in their joint venture, whether by con-
tract, partnership, or by some implication of the law.

3. **NEGLIGENCE: Death of Husband: Suit by Minors: Pre-
sumption None by Wife: Negative Averment.** A peremptory
instruction at the close of the entire case to find for defend-
ants cannot be sustained on the ground that plaintiffs did not
prove a negative averment contained in their petition that the
wife of deceased did not sue within six months after his death.
The widow during the first six months after the death of
her husband may appropriate to herself the statutory action to
recover damages for his negligent killing, and if she does not
sue his minor children may do so during the next six months;
and absent a plea in abatement to the minors' suit that an-
other suit was pending, and absent proof one way or the other,
no presumption can be indulged that the widow had appropriated
the action. Besides, the averment that the widow had not sued
is a negative one, and the means of disproving it is peculiarly
within defendants' knowledge and power, and unless they dis-
prove it the averment will be taken as true.

4. ————: ————: ————: ————: ————: **General Denial.**
Whether or not defendants' general denial put the minor plain-
tiffs on their proof of their averment that the widow failed to
sue, is discussed in the opinion, but the question is reserved,
because its decision is not necessary to a decision of the case.

5. ———: ———: ———: ———: ———: **Not Raised Be-low: Mandatory Instruction: Appellate Practice.** Where the record merely shows that defendants asked and received a mandatory instruction in the nature of a demurrer, the minor plaintiffs cannot be heard on appeal to argue that the point that there was no proof that the widow had not sued for the death of her husband within six months was not raised below and therefore cannot be raised on appeal. If on the whole record the instruction was properly given for any reason, the ruling will be upheld. The rule of appellate practice in such case is that reasons assigned on the record, or existing and not assigned, are immaterial on appeal.

6. ———: **Recovery: Responsive to Petition: Inexperience: Hidden Dangers.** Where plaintiffs rested their case by their petition on one theory, they cannot recover on a different theory, or have reversed the court's ruling directing peremptorily a verdict for defendants. Where they do not allege in their petition that their father was inexperienced as an engineer, or that there were hidden dangers connected with the stopping of defendants' engine "off center," or that it was his duty to stop it off center, or that there was a peculiar way to stop the engine off center, and peculiar and unknown dangers incident to that, they cannot recover on the theory that he was inexperienced and that it was defendants' duty to warn him of the peculiar danger to attempt to stop the engine with a steel rod in an unusual way. Especially should this be the ruling where the evidence shows that he was an experienced engineer, and there was nothing singular or peculiar in the described plan in use in stopping the engine.

7. ———: ———: ———: **Unsafe Place: Facts Not Pleaded.** The petition charged that the engine house floor was unsafe in being rough and uneven "with boards and timbers nailed across," and dangerously unsafe because "covered with grease," whereby deceased engineer was caused to stumble and slip, etc., and none of these allegations were proved. *Held,* that plaintiffs cannot on appeal, in the face of a peremptory instruction given for defendants, substitute for these allegations evidence of a hole in the floor and an unsafe narrow foot plank, or be permitted to recover because there was near the engine a long and wide hole, over which was laid a board from six to twelve inches wide, and that because of the hole deceased could not stand in the proper place to insert the steel rod in the engine's wrist plate.

8. ———: **Fencing Engine: Use of Steel Rod in Stopping Engine.** There was no testimony tending to show that the engineer slipped or stumbled upon the rough, uneven and greasy floor, and thereby fell or was thrown against the exposed and unguarded belts and gearing of any machine, as alleged in the

petition, and which charge is the gist of the cause of action. To the contrary, the proof shows that he shut off the steam to close down the engine, and without adjusting the eccentric rod with a block, and without awaiting the slowing down of the fly wheel, voluntarily took a dangerous position in the line of the stroke of the engine and tried to manipulate the wrist plate with a steel rod in order to stop the engine off center. In doing so, he received somewhere on his person, from the steel rod, the full force of the engine, and was hurled towards the dynamo, and killed. *Held*, even though it be allowed that defendants should have fenced their dangerous machinery, yet failure to fence was not the proximate cause of his death, but his negligent placing himself in a perilous position and his negligent manipulation of the engine.

9. ———: **Absence of Light.** Unless the insufficient light was a causal feature in deceased's death, or if the light was insufficient, means were at hand when the electric light ceased, by the shutting down of the dynamo, to light the gas, no recovery can be allowed on that theory.

Appeal from Grundy Circuit Court.—*Hon. G. W. Wanamaker*, Judge.

AFFIRMED.

*Geo. A. Adams* and *Hall & Hall* for appellants.

(1) It was the duty of defendants to construct guards around the belts and other machinery to protect their employees while operating the same, and their failure to do so rendered them liable for the damages resulting from such neglect and failure. R. S. 1899, sec. 6433; Colliott v. Am. Mfg. Co., 71 Mo. App. 170; Blair v. Heibel, 103 Mo. App. 633; Stafford v. Adams, 113 Mo. App. 721; Morgan v. Hinge Mfg. Co., 120 Mo. App. 590; Millsap v. Beggs, 122 Mo. App. 6; Lore v. Am. Mfg. Co., 160 Mo. 621; Henderson v. Kansas City, 177 Mo. 492. "The purpose of the statute is to provide for the safety of the employees in a mode which the common law does not." Colliott v. Am. Mfg. Co., 71 Mo. App. 171; Blair v. Heibel, 103 Mo. App. 634; Millsap v. Beggs, 122 Mo. App. 10. (2) Defendants were also guilty of negligence in leaving

the floor out and a hole between the engine and the belt where deceased had to stand while stopping the engine, and with nothing but a narrow six-inch board to stand on. It was the duty of defendants to furnish deceased a reasonably safe place to work. Fugler v. Bothe, 43 Mo. App. 44; Zellars v. Missouri Water & Light Co., 92 Mo. App. 117; Parsons v. Pack. Co., 96 Mo. App. 382; Carter v. Baldwin, 107 Mo. App. 228; Dayharsh v. Railroad, 103 Mo. 570; Herdler v. Stove & Range Co., 136 Mo. 15; Doyle v. Trust Co., 140 Mo. 18; Minnier v. Railroad, 167 Mo. 112; Smith v. Peninsular Car Works (60 Mich. 501), 1 Am. St. Rep. 542. (3) Deceased in entering the employ of defendants did not assume the risk incident to the defendants' failure to construct guards to protect their employees from the danger from the exposed machinery; he did not assume the risk of defendants' negligence. Pauck v. Beef & Provision Co., 159 Mo. 477; Stafford v. Adams, 113 Mo. App. 717. (4) While the evidence is that deceased ran an engine in a mill, and fired a railroad engine, and that the engine he was running at the time, the machinery and surroundings were all open and obvious to him, the undisputed evidence is that he had never run, and had no experience whatever in running, an electric light plant such as that, and there is no evidence that he was instructed how to run, start or stop this engine, or had ever seen it started or stopped. He was wholly inexperienced in the particular duty engaged in at the time of his death. The law made it the duty of defendants to warn him of the danger in stopping the engine too soon after the steam had been shut off and without the use of the block. Their failure to do so was actionable negligence. Nairn v. Nat. Bis. Co., 120 Mo. App. 147; Nicholds v. Plate Glass Co., 126 Mo. 64; Dean v. Woodenware Works, 106 Mo. App. 180. (5) The burden was upon defendants to prove that deceased was guilty of contributory negligence. Buesching v. Gaslight Co..

73 Mo. 219; Parsons v. Railroad, 94 Mo. App. 293; Mitchell v. City of Clinton, 93 Mo. 158; Bluedorn v. Railroad, 108 Mo. 448. (6) The question of the negligence of deceased under all the circumstances was a question for the jury as the triers of the facts, and not a matter of law for the court. Hamilton v. Mining Co., 108 Mo. 376; Henderson v. Kansas City, 177 Mo. 493; Montgomery v. Railroad, 181 Mo. 477; Nicholds v. Plate Glass Co., 126 Mo. 65; Kane v. Railroad, 100 Ill. App. 181; Hober v. W. P. Nelson Co., 101 Ill. App. 336.

. *E. M. Harber, A. G. Knight, H. C. Smith* and *E. R. Sheetz* for respondents.

(1) The court properly sustained defendants' demurrer to the evidence. Although plaintiffs allege in their petition that Mary Alice Fulwider, the mother of plaintiffs, had failed to institute her action for the death of her deceased husband in the time provided by law, they wholly failed to prove such allegation, in that no evidence whatever concerning this essential fact was adduced, and, hence, the jurisdiction of the trial court was defeated. Barker v. Railroad, 91 Mo. 86; McIntosh v. Railroad, 103 Mo. 131; Sparks v. Railroad, 31 Mo. App. 114; Packard v. Railroad, 181 Mo. 421; Poor v. Watson, 92 Mo. App. 89; McNamara v. Slavens, 76 Mo. 329; Hamilton v. Railroad, 39 Kan. 56; Case v. Cordell Zinc & Lead Mining Co., 103 Mo. App. 478. (2) In considering the question of contributory negligence the fact that deceased had been working only a short time before receiving his injuries is immaterial. Smith v. Box Co., 193 Mo. 734; Millsap v. Beggs, 122 Mo. App. 7. (3) The evidence failed to show that defendants did not furnish deceased a reasonably safe place to work. Witness Hannan testified that when deceased applied the rocker bar he was standing on a perfectly solid floor of lumber and that it was comparatively a new floor. However, if deceased had

been standing on a narrow six-inch board, as asserted in appellant's statement and brief, he would be held to have assumed the risk under the rule announced in Fugler v. Boothe, 117 Mo. 475. (4) On accepting employment a servant assumes all the ordinary and usual risks and perils incident thereto, whether it be dangerous or otherwise. Haviland v. Railroad, 172 Mo. 106; Beasley v. Transfer Co., 148 Mo. 413; Bradley v. Railroad, 138 Mo. 293; Winkler v. Basket Co., 137 Mo. 394; Smith v. Hammond Packing Co., 111 Mo. App. 13; Depuy v. Railroad, 110 Mo. App. 110; Nash v. Dowling, 93 Mo. App. 156; Halliburton v. Railroad, 58 Mo. App. 27; Roberts v. Tel. Co., 166 Mo. 370. It is not negligence for a master to set his servant to a piece of work where such servant is of sufficient age and intelligence to appreciate the risk which is both patent and incident to the particular work. Evans v. Mfg. Co., 5 Misc. (N. Y.) 330, 25 N. Y. Supp. 509. If the servant has a general knowledge of defects sufficient to charge him with knowledge of danger, he assumes the risk although he may not know of the particular defects which cause the injury. 26 Cyc. 1202. The servant need not have absolute knowledge of the risks, if they are such that an ordinarily prudent man under the circumstances could by reasonable diligence have discovered them. Clark v. Railroad, 179 Mo. 66; Lucey v. Hannibal Oil Co., 129 Mo. 32; Steinhauser v. Spraul, 127 Mo. 541; Gibson v. Railroad, 46 Mo. 163; Beymer v. Hammond Packing Co., 106 Mo. App. 726; Harrington v. Railroad, 104 Mo. App. 663; Beckman v. Anheuser-Busch Brewing Assn., 98 Mo. App. 555; Cothron v. Cudahy Packing Co., 98 Mo. App. 343; Franklin v. Railroad, 97 Mo. App. 473.

LAMM, P. J.—Suing for the wrongful death of their father and putting in their evidence in that behalf, an adverse verdict was coerced by an instruction

in the nature of a demurrer at the close of their case, and plaintiffs appeal.

The petition counts on two theories. One is that defendant corporation, Fulkerson and Carnes were running and operating an electric light, gas and power plant in the city of Trenton and used in their said business certain dangerous machinery, consisting of engines, belts, drums, shaftings, gearing, etc., which machinery was negligently left unfenced, whereby J. E. Fulwider, father of plaintiffs and an employee of defendants, was killed. That is to say, by the first theory of the case a duty was raised to fence dangerous machinery by statute and that there was an actionable breach of this duty, resulting in Mr. Fulwider's death. The other theory is that defendants owed a common law duty to Mr. Fulwider to furnish him a reasonably safe place in which to work and breached such duty, in that they (to quote from the petition) "failed and neglected to furnish their said employees a reasonably safe and suitable place in which to work, and carelessly and negligently suffered and permitted the floors in the building in which said machinery and other appliances above mentioned were situated and where their said employees while engaged in running and operating the same had to work, to become rough and uneven with boards and timbers nailed across and over the same and permitted the same to become and remain covered with grease and to become and remain unsafe, and failed and neglected, carelessly and negligently, to furnish sufficient lights so as to enable their said employees to perform their said work with reasonable safety."

The petition further charges as follows:

"Plaintiffs further state that on said 27th day of January, 1904, their said father, J. E. Fulwider, was in the employ of the defendants assisting in running, operating and working about said plant and establishment and the said shafting, belts, gearing, drums,

engines and other machinery and appliances therein, and that while he was so engaged and employed in the discharge and performance of his duties, and without fault or negligence on his part, but by reason of the said failure and neglect of the defendants to safely and securely guard and protect the said engines, belts, shafting, drums and other machinery and appliances as aforesaid, and by reason of the said failure and neglect of the said defendants to furnish their said deceased employees a reasonably safe and suitable place in which to work and sufficient lamps and lights to enable him to see in doing his said work, the said J. E. Fulwider was unable to see so as to discharge his said duties in safety *and slipped or stumbled upon said rough, uneven and greasy boards and floor and thereby and by reason thereof and by reason of the said failure and neglect of defendants to properly guard, enclose and protect said machinery, engines, belts, shafting, gearing, drums and appliances as aforesaid, he fell or was thrown against and onto one of the said exposed and unguarded belts and gearing of said plant and establishment and was dragged or drawn into the said machinery, wheels, drums and gearing of said plant and establishment and was thereby crushed, mangled and killed."*

Two answers were filed, one by the corporation and the other by the individual defendants. These answers make an issue on the appointment of Homer Hall as curator of the minor plaintiffs and allege that the probate court making it had no jurisdiction to do so. These features are not germane to any error assigned, and may be laid on the shelf. A plea of contributory negligence is common to both answers. There is, too, a common averment of assumption of risks and a general denial.

The answer of the individual defendants is more than a general plea of contributory negligence. It

specifies a bundle of acts which in the aggregate go to make up the alleged negligence of decedent, *viz.*:

"Defendants further say that the death of said J. E. Fulwider was caused and occasioned by his own negligence and carelessness in the manner as they are informed and believe and aver the facts to be, when he undertook to perform certain duties of the Trenton Gas, Light and Power Company in that he wrongfully and negligently undertook to stop the engine, in use by defendant Gas, Light and Power Company, and of which, as well as the other machinery and appliances, he had charge, management and control, by the use of a certain iron rod and physical exertion and efforts upon his part and by placing himself in an improper and unnecessary position, without stopping said engine by the use of certain throttle valve and appliance made, intended and provided for that purpose, and without after applying said throttle valve and appliances so made, intended and provided for the stopping thereof, waiting, as common prudence and proper regard for his own safety would and did require he should, for said engine to stop of its own momentum and volition, and that except for the reckless, negligent and careless acts and conduct of deceased, which contributed directly and in fact caused his death, he would have received no injury resulting in his death or otherwise."

The answer of the individual defendants further pleads a misjoinder of parties defendant. It complains that the petition does not aver that there was a partnership between the corporate defendant and Carnes and Fulkerson in carrying on the business of manufacturing and selling gas, light and power. It complains that there is no allegation showing a joint operation of the plant or joint liability of defendants.

The case was heard as if a reply was filed, though we find none in the record.

Any facts material to a determination of questions raised on appeal will appear in the opinion.

I.  If facts showing a misjoinder of parties plaintiff or defendant do not appear on the face of a petition so the objection can be raised as an issue at law by demurrer as provided by statute (R. S. 1899, sec. 598), they are well pleaded by answer.  In this case the individual defendants plead no facts in their answer showing a misjoinder of parties defendant, but by frugal short-cut in procedure they cut around a demurrer and raise a demurrable issue by answer.  If an answer can swap places with a demurrer, then the ancient and honorable office of the latter is vacated by one stroke once for all.  If we tolerate that view then the plea of demurrer becomes a vermiform appendix (to speak metaphorically) in the body of the law, fit only for the present fashionable use of being cut out as with a surgeon's knife, and all the learning on that score is reduced to dust and ashes.  We must adhere to established rules or we will have chaos instead of order in administering law.

Defendants insist there was a misjoinder of parties defendant and that the peremptory instruction may be sustained on that theory.  On this head, we hold, first, that they did not properly raise the question below; second, that they waived it by answer; and, third, that the petition is sufficient in the particulars assailed.  This latter, mainly because tortfeasors are liable jointly or severally.  I may sue one or all of those doing me a negligent injury.  The ultimate fact I must plead is that defendants negligently injured me in this, that or the other way.  In this case the petition alleges "the defendants were running, managing, operating and controlling" the gas, electric and power plant and the "engines, boilers, belts, drums, shaftings, gearings," etc.; that defendants owed a duty to decedent, setting it forth; and that "defendants" care-

lessly and negligently failed and neglected to do their duty in protecting their dangerous machinery, and negligently failed to furnish a safe field of operations for their employee. The petition charges that decedent was in the employ of "defendants" and was killed through their negligence. In fine, it is a good petition. It was not necessary to plead evidential facts showing *how* defendants were united in their joint venture, whether by contract, partnership, or by some implication of the law. Not only was the petition good, but the proofs tended to cast liability on all the defendants, if any liability existed at all for the death of Fulwider. Hence, the peremptory instruction cannot be sustained on the insufficiency of the petition (or failure of proof) in that regard, and the point is ruled against defendants.

II. Counsel argue that the case was properly taken from the jury because the proofs did not show that the widow of Mr. Fulwider had not brought suit within the six months allowed her under the statute. As to this: Plaintiffs allege in their petition that she did not sue within that time. The suit is shown to have been brought within one day of the running of the one-year Statute of Limitations. The proof shows there was a widow and that plaintiffs were the only minor children of decedent at his death. The widow was on the stand as a witness. She was examined in chief by defendants' counsel. She was not asked whether she had sued or not and the record is otherwise dark.

On such record, we observe: there is no plea in abatement in the answer based on the theory that another suit was pending for the death of Mr. Fulwider. Now, the statute creates the cause of action for wrongful death. It nominates the persons to sue and appoints the time. During the first six months the right to appropriate it rests in the widow, during

the next six months in the minor children.   That the
defense of the pendency of another suit wherein the
widow has appropriated the cause of action is matter
of abatement to a subsequent suit by the children is
beyond question.   In this condition of things two views
spring from the good sense of the thing.   One is that,
absent proof one way or the other (as here) there
would be no presumption indulged that the widow had
appropriated the cause of action.   If she had not ap-
propriated it, clearly plaintiffs may appropriate it if
they sue within the time allowed them by statute, as
they did in this case.   In that view defendants' point
is wholly in the air and there is nothing to ground it
on.   Another view is that a presumption might arise
that there was no case pending by the widow.   To
illustrate: If the widow had in fact sued to recover the
statutory damages to herself, defendants (pinched by
such shoe) would know that fact better than the minors
or their curator.   It might be an affirmative fact and,
hence, the burden of proving it might rest naturally
on those naturally and best knowing it.   If, armed
with that information, they fail to plead so advan-
tageous a thing to them as the pendency of the widow's
suit, and thus put their best foot foremost, would not
a reasonable inference arise that no such suit was
pending?

But there is still another view fatal to defendants'
contention.   The negative averment that the widow
had not sued may be conceded necessary to the state-
ment of a perfect cause of action.   [See authorities
cited by defendants' counsel.]   But being negative and
the facts relating to the existence of a prior suit being
peculiarly within the power and knowledge of defend-
ants, in such case the establishment of the negative
allegation is not an essential element in plaintiffs'
case.   For where the subject-matter of a negative aver-

216 Sup—38

ment lies peculiarly within the knowledge of the other party the averment is taken as true, unless disproved by that party. The general rule is well put by our Brother GRAVES in Swinhart v. Railroad, 207 Mo. l. c. 434, as follows: "From them all," said he (referring to the authorities in review) "it is deduced that generally the burden is upon the plaintiff to make out his case. That if in the statement of his case, negative averments are required, and the proof of such negative averments is not peculiarly within the knowledge and power of the defendant, then plaintiff must affirmatively establish such negative averments, but if, on the other hand, the proof of such negative averments lies peculiarly within the knowledge or power of the defendant, then such negative averments will be taken as true unless the defendant speaks and disproves them. Of course, if the knowledge and power to produce the evidence is possessed equally, the plaintiff must make the proof."

We think the peremptory instruction, for the reasons set forth, could not be sustained on the ground of failure of proof of the negative averment.

Plaintiffs' counsel argue that no such point was raised or passed on below and hence it cannot arise here. The difficulty with that contention is that there is nothing in the record to show what points were made below or positions taken relating to giving the instruction doing the mischief. The record merely shows that defendants asked and received a mandatory instruction in the nature of a demurrer. Dealing with that condition of things, the settled rule of appellate practice is applicable to the effect that reasons assigned on the record, or existing and not assigned, are immaterial on appeal. So long as an instruction is properly given for any reason, as a sound conclusion of law arising on the whole record, it is well enough.

It is further argued by plaintiffs' counsel that the question now up, at bottom, on analysis, goes to the

mere *capacity to sue*. They contend such is a statutory ground of special demurrer, if the defect is disclosed on the face of the petition. If not so disclosed, they say it must be struck at by a special plea in the answer or it will be waived. They rely on the doctrine of cases like Baxter v. Railroad, 198 Mo. 1, and cases cited, and Gross v. Watts, 206 Mo. 373. Those cases hold that in the absence of a special plea in the answer in the nature of abatement, plaintiffs are not required to prove an averment of their petition relating to an appointment of a next friend, a guardian, a curator, or an administrator. Treating the pendency of another suit as subject-matter of abatement, it is my individual view that a general denial did not put plaintiffs on their proof of their averment that the widow failed to sue, and that the point is governed by the reasoning of the Baxter case, *supra*. But such holding is not necessary to a decision of the case, and the question is reserved. We prefer to let our opinion rest on the grounds heretofore stated.

III. Great stress is laid by plaintiffs' counsel on the contention that it was bad to give the demurrer because the law raises a duty on the part of the master to warn inexperienced servants, placed in charge of intricate and dangerous machinery, of lurking danger, and instruct them how to safely manipulate such machinery. They say this record discloses that decedent was a man inexperienced in running the dangerous and intricate machines used in the manufacture of electricity. Not only so, but they say that the proof shows (and this may be conceded to them) that to stop the powerful Corliss engine used by plaintiffs "off center," so that it might be started by turning steam into the cylinder without getting it off center by the use of manual power, it was necessary to use a stout steel rod which was to be inserted in a contrivance called a "wrist plate" after another contrivance called

an "eccentric rod" had been adjusted by the use of a block provided for that purpose, and after the steam had been turned off and the great flywheel of the engine had run down from eighty-five revolutions per minute to twenty or twenty-five revolutions. It seems that one way to stop the engine is to cut off the steam and let it stop itself, but that if the motion of the flywheel is allowed to take its own course in dying out, the engine may stop "on center" (*i. e.*, on its dead points), and that by turning off the steam and after the motion is reduced, as said, if the eccentric rod is adjusted by the use of the block aforesaid, and the steel rod is inserted in the wrist plate, the annoyance of stopping on center is overcome by the manipulation of the engineer. They say that the record shows (and this, too, may be conceded to them) that in undertaking to stop the engine off center at five o'clock a. m. on January 29, 1904, by turning off the steam and inserting the steel rod in the wrist plate while the flywheel was revolving rapidly at sixty revolutions per minute and without the use of the block to adjust the eccentric rod, decedent, ignorant of the danger, received the full force of the power of the engine through the steel rod that he had inserted in the wrist plate, and was hurled to his death, and (they argue) that plaintiffs should recover because of the inexperience of their father in running such machinery and because defendants failed to instruct him in the use of the block in adjusting the eccentric rod and failed to warn him of the danger incident to stopping the engine when the flywheel was revolving rapidly.

Learned counsel make a showing of marked industry in citing authorities sustaining their abstract proposition of law. But the trouble in this regard is manifest as well as manifold. At the very door of their contention, they are met with the controlling proposition that they do not allege in their petition that their father was an inexperienced engineer. They do not

allege there were hidden dangers connected with the stopping of defendants' engine off center, nor do they allege that their father's duty was to stop it off center. They make no allegation to the effect that there was a peculiar way to stop this engine off center and peculiar and unknown dangers incident to that way. So, their petition is as dumb as an oyster on any issue relating to the duty to instruct their father, or a breach of that duty. To the contrary, they rested their case on their pleading on an entirely different theory and they may not now, with insight sharpened by misfortune, mend their hold on appeal and convict the trial court of error on such mended hold. If plaintiffs desired to recover on the grounds of inexperience, or hidden danger, of the necessity of warning, or instructions and the negligent failure to warn and instruct, they should have raised those issues by appropriate averments in their petition. [Potter v. Knox Co. Lumber Co., 146 Ind. 114; 13 Ency. Pl. and Pr., pp. 900-901.]

Moreover, the testimony does not show that decedent was an inexperienced engineer. To the contrary, it tends to show that he was experienced. It seems that he came from Nebraska shortly before to take charge of defendants' plant as its engineer. Presumably, from the common run of business affairs, he held himself out as capable of doing that very thing. From plaintiffs' own witnesses it appears there was nothing singular or peculiar in the described plan in use in stopping defendants' engine. So, while there is no proof that decedent received instructions, or warning, there is none that he wanted any or held himself out as needing any. Nor is there any evidence that defendants knew of his ignorance. This is not the case of a servant, known by his master to be inexperienced, and who is assigned to a dangerous duty by his master—a duty known by the master to be dangerous

but not known by the servant to be dangerous. Hence, cases of that character do not aid plaintiffs' case.

The point is disallowed.

IV. Stress is laid by plaintiffs' counsel upon the fact that in the engine room at the spot that decedent would best and naturally stand (in comparative safety), parallel with and not in line with the stroke of the engine, to insert the steel rod in the wrist plate, there was a large hole in the floor. We gather some repairs were under way. The hole was two feet deep and quite long and wide and over it was laid a board or plank. One witness said the board was six inches broad and one inch thick, and another that it was twelve inches broad and two inches thick. On this score, we are asked to hold that this hole was negligently left in the floor, that the board was an unsafe place to stand since it only partly covered the hole, that decedent, to avoid the danger of the hole he knew to exist, planted himself to one side and in line with the stroke of the engine, and thus was killed. But no such complaint was made of the floor in the petition. It is there alleged that the floor was unsafe in being rough and uneven "with boards and timbers nailed across" and dangerously unsafe because "covered with grease," whereby decedent was caused to stumble and slip, etc. None of the allegations in this petition in this regard were proved and plaintiffs may not be allowed on appeal to substitute a hole and an unsafe, narrow foot plank over it, in the *evidence,* for the rough, uneven and greasy floor of the *petition.* They specified the negligence complained of and, having identified it by earmark and notified defendants of the character of the case they were called on to meet, they may not argue their case on demurrer on review on a different state of facts. Otherwise, they would be allowed to sue on one cause of action and

recover on another, contrary to the justice of the thing and in violation of all precedent.

V.  There was not an iota of testimony tending to show that decedent slipped or stumbled upon the rough, uneven and greasy boards, and thereby fell or was thrown against the exposed and unguarded belts and gearing of any machine, as alleged in the petition, and which charge is the gist of the cause of action. To the contrary, the proof shows as already indicated. Decedent shut off the steam to close down the engine, and, without adjusting the eccentric rod with a block, and without awaiting the slowing down of the flywheel, he voluntarily took a dangerous position in the line of the stroke of the engine and tried to manipulate the wrist plate with the steel rod in order to stop the engine off center.  In doing so he received somewhere on his person, from the steel rod, the full force of the engine and was hurled towards the dynamo.  Whether he hit it first or the belt is uncertain, but in one way or the other he was finally dragged by the belt into the flywheel pit.  He was found there dead and the steel rod with him.  Whether he was killed by striking the dynamo or belt and by being crushed by the wheels into the pit, or was killed outright by a blow from the steel rod and his lifeless body hurled into the machinery and dragged into the pit, nobody knows. Plaintiffs put on a witness who saw decedent at the time and stood close by him.  He described the accident in detail, as we have in a nutshell.  He testified that decedent neither spoke nor made a sound after he received the force of the blow from the rod.  For some reason (not explained), there was no attempt to show the character of his wounds or what instrumentality caused his death, and it would be a mere idle guess to say whether he was mauled and broken in the machinery, or killed outright by a blow from the steel rod.  On such facts, if we should allow to plaintiffs that defend-

ants should have fenced their dangerous machinery, yet before liability is cast on defendants it is uniformly held that it must appear that the failure to fence was the proximate cause of the injury. [Huss v. Bakery Co., 210 Mo. 44.] Unless the specified negligence is a causing factor leading up to the injury, no action lies. On the proof furnished, we cannot so hold. To our minds the testimony tends to show that this unfortunate man came to his death because he negligently placed himself in a perilous position and negligently manipulated his engine.

VI. It was alleged in the petition as a ground of negligence that no light was furnished. But it appears that a torch was used by decedent and there is no suggestion that the torch light was not sufficient. It must be held on the case made that the mere absence of any other light was not a causal incident in the matter.

Not only so, but when he turned off the steam in the engine he should have known the electric lights would give out. They did give out, for the dynamo and the "exciter" ceased, or were unable, to generate enough electricity to furnish light. For such emergency gas jets were provided by defendants. Defendants' plant manufactured gas and it was ready at hand. When the engine room was not lighted by electricity, means were at hand to light it by gas made at the plant. This was obvious to anyone. So, too, it was obvious that all necessary to do was to connect the gas and light it. There is no substance in the allegation relating to the absence of light. Under the proof, plainly the light had nothing to do with the disaster, and if it had aught to do with it decedent, having control of the machinery, the appliances and the whole plant, should have lit the gas.

There was point blank testimony furnished by plaintiffs that decedent took an unusual and dangerous position—one obviously dangerous—in stopping

his engine off center. By that act he caused his death. Under such circumstances no manufacturing plant could be carried on if its business was burdened with liability for the deaths of employees resulting from their own unhappy inadvertences.

Let the judgment be affirmed. All concur except *Woodson, J.,* not sitting.