GEORGE A. HARGER, M. G. HOLLOWAY, WILLIAM A. STAIR, COLUMBUS A. MOORE, PEARL HOLLETT, for Themselves and All Other Members of the Pleasant Ridge Baptist Church, v. JESSE W. BARRETT, Attorney-General, and Unknown Heirs, Consorts, Devisees, Donees, Alienees, and Immediate, Mesne, Remote, Voluntary and Involuntary Grantees of WILLIAM W. BROOKS, WALTER LEE BROOKS and CHLOE McKINNEY BROOKS, Deceased, and W. W. ANTILL, WAYNE CAMPBELL, a Minor, by JOHN A. CAMPBELL, His Guardian *Ad Litem*, BOONE BOUSE, BARNETT BOUSE, DECIA PITTS, RAY BOUSE and FRED BOUSE, Appellants.—5 S. W. (2d) 1100.

Division Two, March 24, 1928.

634

*W. D. Summers* and *Roscoe C. Summers* for appellants Bouse Heirs.

*Cyrus Crane, Wm. M. Anderson* and *Henry W. Fox* for appellants W. W. Antill and Wayne Campbell.

*Allen Glenn & Son* and *Crouch & Crouch* for respondents.

WALKER, J.—This is a suit to quiet title to certain land in Cass County, belonging, in his lifetime, to William W. Brooks. The determination of the matter at issue involves a construction of a clause in the will of William W. Brooks, in which he bequeathed, under the conditions therein stated, the corpus of his property to an unincorporated association in Cass County, designated as the Pleasant Ridge

Baptist Church. The plaintiffs, respondents here, sue for themselves and all other members of the said church. The bequest to the church involving a public charity, the then Attorney-General was made a party defendant, as representing the public. The other defendants—appellants here—sustain the following relationship to William W. Brooks: William W. Antill was his nephew, being a son of his sister; the Bouses were brothers, sisters, nephews and nieces of Chloe Mc-Kinney Brooks, the wife of William W. Brooks. Wayne Campbell, a minor, was not of kin, either to William W. Brooks or his wife, but was a beneficiary in the will of the personal effects of the wife who made no disposition therein of any real property.

William W. Brooks was the owner of a tract of two hundred and forty acres of land in Cass County. He died testate on the 12th day of April, 1902. He left surviving him his wife, Chloe McKinney Brooks, and their son, Walter Lee Brooks, their only child.

To his wife he bequeathed the income and profits of his property of whatever kind and nature, to have and to hold so much of same as she may need for her comfortable support during her widowhood.

To his son, Walter Lee Brooks, he bequeathed all of the remainder of the net income of his property after the payment of the testator's debts and the comfortable support and maintenance of his wife as aforesaid. The income to the son was to be absolute during his life only after freeing the property of all taxes, his mother's support and the expenses incident to the care of the property. The corpus of his property (the property itself) he devised and bequeathed to the children of his son, born to the latter after the date of the will. The reason for this limitation is stated, but it is not necessary to the determination of the issue here seeking solution. The sixth clause of the will, upon which the controversy herein is based, is as follows:

"Sixth: Should my said son die without child or children hereafter born to him (and my wife die without further children by me) then and in that event I desire the corpus of my property to go to the Pleasant Ridge Baptist Church for the erection or improvement of a church house and what is not needed for the purpose to be used as may be directed by said church."

The son, Walter Lee Brooks, died intestate in 1919, leaving a widow, Myrtle Brooks, but no children. His mother, Chloe McKinney Brooks, died testate, so far as her personal effects were concerned, in March, 1922.

The contention of the plaintiffs is that upon the deaths of the son and the widow, of William W. Brooks, they became, as members of the Pleasant Ridge Baptist Church, seized of the real estate of William W. Brooks, under the provisions of the sixth clause of his will above set forth.

All of the defendants contend that the said sixth clause is void, and no other provision having been made in the will for the vesting of the title to the lands of the testator that they are seized of interests therein which they ask the court to adjudicate and determine.

The claim of William W. Antill is as a collateral heir of his uncle, William W. Brooks. The claims of the Bouses are as collateral heirs of Chloe McKinney Brooks, who it is contended was seized of an interest in the real estate of her husband.

The guardian *ad litem* of Wayne Campbell claims that his ward is entitled to an interest in the real estate of William W. Brooks under a clause in Chloe McKinney Brooks's will which, following a specific bequest of personal property to Wayne Campbell, provides that "all other property not disposed of in my will and codicil I desire to go to Wayne Campbell."

The trial court entered a decree quieting the title to the land in controversy in the plaintiffs, from which the defendants have appealed.

I.  This case involves not only the construction of the will of William W. Brooks, but incidentally that of his wife, Chloe McKinney Brooks.

Whether testamentary construction will alone suffice to authorize the exercise of equitable jurisdiction need not concern us in the determination of the matters at issue. The statute (Sec. 1970, R. S. 1919) under which the action was brought, is comprehensive in its terms and relief thereunder may be invoked by any person claiming any title, estate or interest in real property, whether the same be legal or equitable, certain or contingent, present or in reversion or remainder and whether the party be in possession of the property or not. The pleadings herein ask equitable relief; the case was tried and determined as one in equity, and we are therefore authorized in so classifying it. [Titus v. Development Co., 264 Mo. l. c. 239, and cases, 174 S. W. 432.] Thus classified, the well-established rule in equity pleading may be invoked that one or more members of a voluntary association, whether organized for private or public purposes, may sue for or in behalf of all of the members. We so ruled in Lilly v. Tobbein, 103 Mo. l. c. 488, 15 S. W. 618. This was a suit to establish a rejected will and while technically an action at law on account of its possessing certain equitable features it was held that it was properly brought in the names of certain members of the church suing in their own behalf and that of other members. The application of the rule as to the necessary parties plaintiff is accentuated under the facts at bar. Here the nature of the action is not as in the Lilly

case, technically at law, but from its subject-matter, as indicated by the pleadings, attested by the facts and the purview of the statute under which it is brought, equitable in its nature. No strained construction therefore is necessary to sustain the conclusion that as to the parties plaintiff, this suit is properly brought.

If this were not true, the time and the manner in which the contention as to the defect of parties is made, would preclude its consideration under our statute. As to time, the contention first finds expression in appellants' brief; as to manner, it is thus brought to our attention. Our statute (Sec. 1226, R. S. 1919) provides that if an incapacity of the plaintiffs to sue appears on the face of the petition, defendants must raise the point by special demurrer, or be held to have waived it; or, if the incapacity does not appear upon the face of the petition, it must be raised by answer or it is likewise waived. [Crowl v. Am. L. Oil Co., 255 Mo. 305, 164 S. W. 618; Ashton v. Penfield, 233 Mo. 391, 135 S. W. 938; Fulwider v. Gas, L. & P. Co., 216 Mo. 582, 116 S. W. 508.] If, therefore, the rules of equity had not settled this question, it has been waived by the defendants.

II. This bequest constituted a gift for a charitable use, which is uniformly held to include all gifts in trust for a religious or educational purpose in their varying diversity in whatever manner the donors desire to have them applied. As such they may be more generally designated as public trusts in that they are constituted for the benefit of the public at large or some portion of it answering to a particular description. [Holman v. Renaud, 141 Mo. App. 1. c. 404, 125 S. W. 483; Carter v. Whitcomb, 74 N. H. 482, 17 L. R. A. (N. S.) 733; 39 Cyc. p. 32, notes 27 and 28.]

We held explicitly, Judge LAMM speaking for the court, in Strother v. Barrow, 246 Mo. 1. c. 249, 151 S. W. 960, that under the English Statute of Charitable Uses (43 Eliz. Ch. 4), money and lands donated for the repair of churches created a charitable use. That statute is a part of our common law and its enumeration of charities is not preclusive. Other objects are deemed charitable in a legal sense (Buchanan v. Kennard, 234 Mo. 117, 136 S. W. 415); for example, a grant for the building of a church has always been held to raise a charitable use—religion being but a part and parcel of charity for the purposes of jurisprudence. [Sandusky v. Sandusky, 261 Mo. 1. c. 358, and cases cited; St. George's Society v. Branch, 120 Mo. 226, 25 S. W. 218; Bishop's Residence Co. v. Hudson, 91 Mo. 1. c. 676, 4 S. W. 435.]

An interesting discussion and determination of what constitutes a public charity under facts similar to those in the instant case, is found in Schmidt v. Hess, 60 Mo. 591. The facts in that case were as follows: Christian Routzong conveyed certain land in Jefferson City for burial purposes to the Evangelical Lutheran Trinity Church, an unincorporated association. The trustees of an association designated as the German Evangelical Central Congregation acquired possession of the land. Suit was brought by representatives of the Lutheran Trinity Church to restrain the trustees of the Central Congregation from using the land conveyed. No question was raised or ruled upon as to the right of the parties to sue. This court held that the title to the property was vested in the plaintiffs for the Lutheran Trinity Church and in discussing the nature of the grant said in effect: "No doubt is entertained that this gift . . . is a charity within the meaning of the rules of chancery. [2 Story Eq. Juris. sec. 1164, and cases cited.] And although in consequence of the nonincorporation of the church for whose benefit the grant was made, there was no one *in esse*, at the time of making the donation, capable of receiving the trust; yet the use being a charitable one, a court of equity, having ascertained the intent of the grantor, will not allow the grant on that account to fail, but will see to its effectuation," citing cases.

III. The use being public, uncertainty as to the individual to whom the benefit may reach will not defeat the gift. This is on the principle that a charitable use, as at bar, always receives a favorable consideration from the courts. In Re Rahn's Est., 291 S. W. (Mo.) l. c. 124, the bequest was made to the German Red Cross, for the relief of the widows, orphans and invalids of the world war. Such a society did not, at the time, exist, but it was held that the bequest would not fail on that account, or because the beneficiaries named were too indefinite.

In Hadley v. Forsee, 203 Mo. 418, 101 S. W. 59, the will gave all of his property to the testator's wife for her use and benefit during her life, subject to the following conditions: First, that she pay all of his debts and that she give as she sees fit of his property to his relatives; and second, that the balance of his property be given to advance the cause of religion and charity in such manner as his wife may deem most conductive to carrying out his wishes. It was upon this second paragraph that the plaintiffs based their action to enforce a public trust. In construing the same this court held that it was not void for uncertainty, but while clearly defining the testator's intention could not be enforced because the wife, the trustee, to whom he confided his purpose as to the particular church or charity he had in mind, was dead and the objects of his bounty were impossible of

determination. Judge VALLIANT, in discussing this question, said, in effect: Whatever infirmity may have existed in this bequest, if the wife had survived and had attempted to enforce the trust, is not discussed. It need not be, as applicable to the case at bar, because there exists no difficulty in determining from the clause of William W. Brooks's will who were empowered to enforce it. If the clause was subject to the criticism of obscurity or indefiniteness, which it is not, these infirmities would not defeat the gift. [Sappington v. Sch. Trustees, 123 Mo. l. c. 41, 27 S. W. 356.] The following cases are further illustrative of the favorable consideration given by this court to gifts in the nature of charitable uses made to religious and educational associations.

In Helpers of Holy Souls v. Law, 267 Mo. l. c. 682, 186 S. W. 718, it was held that "no principle of law forbade a charitable gift to an unincorporated religious body or any of its orders." Further than this, the court observed that "the competency," in that case, "of the testatrix to execute the instrument was incontrovertible and the terms of the gift precluded the possibility of its failure."

In the case of Mo. Hist. Society v. Academy of Science, 94 Mo. 459, it was held that a court of equity would not permit a charitable gift to fail because of the nonincorporation of the society to which or for the benefit of which the gift was made.

In Schneider v. Kloepple, 270 Mo. 389, 193 S. W. 834, where property was devised to the St. Joseph Orphan Asylum, an unincorporated society, it was held that "a charitable bequest or devise will be upheld if made to a voluntary, unincorporated association." In discussing this question we said: "It is true the institution to which this devise was made was not a corporation, but a bequest of the character here under consideration, will not be permitted to fail on that account."

In Sandusky v. Sandusky, 261 Mo. 351, supra, it is held that "a gift to a trustee for the purchase, construction, furnishing, maintenance and repair of certain parsonages and churches and for the general advancement of Christianity," was valid. It was contended that the bequest in the Sandusky case was indefinite and uncertain, but the court held otherwise. The fact that the bequest in that case was made to a trustee and in the instant case to the church does not render the bequest in the latter uncertain. We held as declaratory of a historical fact in Dudley v. Clark, 255 Mo. l. c. 581, that Baptist churches are strictly democratic bodies, and that each church is supreme in itself. In recognition of this individual supremacy we held in Turpin v. Bagby, 138 Mo. l. c. 10, 39 S. W. 455, that the church, there in question, had the sole power to appoint its trustees and that the legal title to its property would be vested in those regularly appointed.

The right of the parties plaintiff to sue for and that of the church to receive the property is fully determined by the cases cited. Upon an affirmance, therefore, of the judgment of the trial court, the church, in its sovereign capacity, may appoint trustees to dispose of the property and apply the proceeds as directed in the will. Under this state of the facts, no occasion can arise under which the court will be required to administer the trust.

The language of the sixth clause, in making the gift to the church, creates a charitable use and its terms are clear and unmistakable in not only the vesting but in the disposition of the property, under the conditions named, i. e., upon the death of the wife and that of the son without issue, after the date of the devise.

IV. A discriminating review of the cases cited by the appellants disclose that the rulings therein are not in conflict with the conclusions here reached.

In Turpin v. Bagby, 138 Mo. 7, 39 S. W. 455, it is held that a minority of the members of a Baptist Church cannot elect trustees and maintain a suit in ejectment for the church property.

In Beatty v. Kurtz, 2 Peters (U. S. Sup. Ct.), 566, it was held that a regularly appointed committee of a voluntary society of Lutherans in possession of the premises might maintain a suit to prevent a disturbance of their possession.

In the following cases: Bush v. Bullington (Ind.), 78 N. E. 640; Cabe v. Vanhook (N. C.), 37 S. E. 464; Church v. Harken (Ia.), 158 N. W. 692; White v. Rice (Mich.), 70 N. W. 1024; Stewart v. White (Ala.), 30 So. 526, all from other jurisdictions, the burden of the holding was that trustees were the proper parties to bring suits for unincorporated religious societies. The correctness of this ruling, as applied to these societies in those states, may be conceded, but it does not contravene our uniform holdings that while trustees may possess that authority, the right also exists in the members of a Baptist Church or one similarly organized under our law. There is nothing in the ruling of this court in Lilly v. Tobbein, 103 Mo. l. c. 477, 15 S. W. 618, which militates against the conclusion as to the proper parties plaintiff in an action of this character. While it is true, as stated in that case (p. 485), that the trustees were included as parties plaintiff, the ruling had reference to the right of the individual members who it is declared, "sued for themselves and all other members of the association."

In Tucker v. Diocese, 264 S. W. (Mo.) 897, this court defines the allegation necessary to be made when a suit is brought by a voluntary religious organization, an Episcopal Church, to establish its rights under a contract. Passing, as not necessary to be determined here, the difference between the organization of an Episcopal and a Baptist Church, the one being subject to a dominant power and the

other being congregational and independent, it is enough to say that the limit of the ruling in the Tucker-Diocese case was, as to the manner in which the rights of the trustees of the church when made parties plaintiff, should be pleaded, the rights of the individual members not being involved were not considered.

The facts in Corby v. Corby, 85 Mo. 371, being altogether different from those at bar, no reasonable construction can render it a precedent in the instant case.

The reason assigned by the court in Schmucker's Est. v. Reel, 61 Mo. 592, for holding the trust there involved ineffectual on account of its being vague and indefinite, does not, as we have shown, exist in the instant case. That case, therefore, cannot be held to be a precedent in the determination of the issues at bar. A like rule applies to the case of Mo. Hist. Society v. Academy of Science, supra, which properly construed, sustains the propriety of the present action.

The indefiniteness of the bequest in Board of Trustees v. May, 201 Mo. 360, 99 S. W. 1093, is evident from its terms. It, therefore constitutes no authority for a like ruling here. Hadley v. Forsee, supra, we have discussed. It sustains rather than assails the regularity and propriety of the proceedings herein. Contrasting the facts in Jones v. Patterson, with those at bar, the ruling in the former cannot be tenably urged as sustaining the appellants' contention.

In the face of the affirmative rulings of our own court sustaining the regularity of the proceedings in this case, we have not deemed it necessary to review the authorities cited by appellants from other jurisdictions.

V. It is contended that the Attorney-General was an improper party defendant. Following the rule announced in Lackland v. Walker, 151 Mo. 210, 52 S. W. 414, that where the public is the beneficiary of a charitable trust the Attorney-General is not an improper party, he was joined as a defendant. This was upon the theory that the gift having been made to a portion of the public could be classified as a public trust. While this is true, in a legal sense, the failure to make the Attorney-General a party would not have been error, nor does his being so made constitute an objection which can be urged to invalidate this proceeding. The presence or absence of his name could neither help nor hurt the action. Under our procedure the joinder of the Attorney-General, like that of any other party, in a case in which he has no interest, is held to be mere surplusage and not fatal to the proceeding. [Jones v. K. C. Railroad Co., 178 Mo. 528, 77 S. W. 890.] In addition, an objection to parties should be made by special demurrer or by answer; unless so raised such defect is not

subject to review on appeal. [Secs. 1226 and 1230, R. S. 1919; Automatic Sprinkler Co. v. Stephens, 306 Mo. 518, and cases cited, p. 532, 267 S. W. 888.]

Holding as we do that the gift to the church under the sixth clause was valid, it follows that the bequest to the wife and the son was limited to the income from the estate of the testator during their respective lives. Upon their deaths the title to the real estate became vested in the plaintiffs and others as members of the Pleasant Ridge Baptist Church, for the purposes mentioned in the will.

The claims of the defendants, both as to the will of the testator and under the residuary clause of the will of Chloe McKinney Brooks, his widow, are without merit.

The judgment of the trial court is therefore affirmed. All concur.